[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
The plaintiff seeks to recover damages from its former accountant and his firm for alleged malpractice and breach of contract arising out of services rendered to the plaintiff between 1991 and 1995, primarily by the defendant Shernow.
In a three count complaint, the plaintiff alleges professional malpractice, breach of contract, and a violation of the Connecticut CT Page 7121 Unfair Trade Practices Act (CUTPA) entithng it to punitive damages and counsel fees.
The alleged malpractice includes the claims that the defendant Shernow neglected to recognize the malpractice of the plaintiff's prior accountant Carlton Helming in the way he handled a 1988 business acquisition. As a result he continued to follow Helming's previous practices in filing tax returns, thus subjecting the plaintiff to tax penalties and interest.
Shernow is also alleged to have given the plaintiff bad advice in settling its claim against Helming for his above described malpractice and in his handling of an IRS audit which stemmed from the 1988 transaction.
The breach of contract count involves these same areas of services performed by Shernow and also includes the alleged failure to prepare proper tax returns, advise the plaintiff of its liability in the audit, and recognize Helming's errors.
The dispute had its origin in the 1988 acquisition by the plaintiff of a business rival. In this acquisition, the plaintiff was represented by Attorney Alan Solomon, then a principal in the law firm which tried this case for the plaintiff. The accounting services were performed by Mr. Helming. This acquisition was extremely vital to the plaintiff and the principals of the plaintiff corporation were anxious to proceed to close the transaction as soon as possible. The negotiations weren't finalized until early in December of 1988, and the transaction closed in January of 1989.
This factor looms large in light of subsequent events and became a major issue in this litigation. . . Section 338 of the Internal Revenue Code was in effect during 1988, but expired at the end of that year. This section provided for generous tax benefits for business acquisitions completed before January 1, 1989. Mr. Helming apparently treated this transaction as a Section 338 closing, despite the fact that it closed in 1989 and the plaintiff was not entitled to the benefits of that section, though Helming claimed them.
An IRS audit subsequently disclosed that fact in 1994 thereby creating a deficiency which the plaintiff claims Shernow should have detected. At that time, it was learned for the first time that Helming had neglected to file a Section 338 election form, so that the transaction was barred from Section 338 benefits on two counts.
The plaintiff and Helming parted company in April of 1991 and Helming CT Page 7122 brought suit against the plaintiff for alleged unpaid bills. It was at or about this time that Shernow was hired by the plaintiff to replace Helming. Helming now neglected or refused to return the plaintiff's file and tax material and the plaintiff was unable to provide Shernow with data he needed to prepare tax returns and set up a replacement accounting system.
In another development, Shernow also assumed the task of representing the plaintiff in an IRS audit which centered on the plaintiff's tax obligations arising from the 1988-89 acquisition. Helming's refusal to cooperate delayed Shernow in responding to the IRS and eventually Attorney Solomon moved to take Helmings deposition as that litigation proceeded.
The Helming litigation was settled before trial and the plaintiff alleges Shernow endorsed the settlement when he should have known of the potential for future tax liability for the plaintiff by virtue of Helming's malpractice in the preparation of tax documents and procedures employed in the acquisition.
After the Helming cases were settled, the IRS audit resulted in serious tax, penalty and interest charges being levied against the plaintiff when the IRS disclosed that Helming had not filed a Section 338 notice. Thus, the IRS was now treating the acquisition as a completely different transaction.
As the court discusses the issues below, aspects of this brief recitation may be elaborated on.
 DISCUSSION I The standard of Care
To prevail on its malpractice claim, the plaintiff must prove that the defendants Whitten, Horton and Gibney collectively or the defendant Shernow individually breached the standard of care applicable to the services provided to the plaintiff.
As set forth in its brief the claim is
"The gravamen of the Complaint is that the defendants, Thomas Shernow and Whitney, Horton Gibney, P.C., committed malpractice in the preparation of HAS' tax returns, representation of HAS in an Internal Revenue Service (herinafter "IRS") audit and in the provision in expert CT Page 7123 opinion and testimony in the litigation Helming Company vs. HAS. . . ."(HAS, Hunter's Ambulance Service, Inc., the plaintiff).
The plaintiff offered the testimony of Kenneth Pia Joseph Jaconetta, both of whom felt the defendant Shernow had breached the standard of care applicable to his assignments. The defendants offered the opposite view from Stanley Roy.
Of considerable concern to the court in evaluating these opinions is the role played by Mr. Pia throughout the long drawn out dispute and the participation of Attorney Solomon who obviously was a major player on the scene and one who wielded substantial influence and control.
A further factor to take into account is the fact that the plaintiff retained an in house accountant for a portion of this time, in fact, he was the first person to become aware of the potential problems involved in the IRS audit.
 A.
With respect to the Helming litigation, the plaintiff offered no evidence questioning Shernow's "testimony". In fact, that case never went to trial and Shernow was deposed in preparation for trial. Shortly after that disposition in April of 1994, the case was settled and the malpractice alleged with respect to that litigation is that Shernow advised the plaintiff to settle.
Mr. Shernow replaced Mr. Helming as the plaintiffs accountant in 1991 at a time when relations between Helming and the plaintiff were strained at best. In fact, litigation soon ensued. Shernow realized early that Helming was not going to be cooperative and the plaintiff had never been in the habit of accumulating and retaining business and tax records.
Confronted with a dearth of information, he made requests for material from the most likely sources — the plaintiff and Attorney Solomon who was handling the Helming litigation and who was also a top manager at Hunters. In fact, Solomon was second only to its founder, Vein Hunter, in the administrative chain of command.
Though the plaintiff originally planned to have Shernow act as its expert in the Helming case, Mr. Pia assumed that role in his stead in March of 1994. Shernow continued to handle the plaintiffs tax returns and was assigned the task of handling the IRS audit in November of 1992.
The plaintiff claims Shernow should not have adopted the product of CT Page 7124 Helming's efforts in preparing 1991-1994 tax returns and should have questioned much of his predecessor's work. Shernow argues that it was proper for him to assume the validity of Helming's work. It should be noted that at this point in 1991, no one, not even the IRS, was aware the Section 338 Form had not been filed. The audit therefore appeared to be a routine one which Shernow felt could be handled without serious expense to the plaintiff, if he could obtain the supporting material in the possession of Helming.
As late as April of 1994, Helming had not produced the material Shernow wanted, nor had the lack of the 338 Form been discovered.
While the parties disagree as to Shernow's role in the decision to settle the Helming case, the court notes that even if the plaintiffs version of events is accepted, the person who was to act as the expert at trial, Mr. Pia, and the attorney handling the case, Attorney Solomon, proceeded to settle.
Presumably, Mr. Pia and Attorney Solomon had as much knowledge of Helming's malpractice as did Mr. Shernow. While Mr. Shernow had stated that he anticipated no serious deficiency on the audit, Mr. Pia and he had disagreed and Mr. Pia felt there would be a required payment of about $160,000.00.
The court questions the decision to settle without providing Shernow with the material he had been requesting and without taking steps over a three year period to force Helming to produce the data. This could have been helpful in evaluating the IRS audit as well as the Helming suit.
 B.
Shernow's defense with respect to his alleged malpractice in handling the audit involves the same issue: Shernow's requests for data and the absence of that data in the plaintiff's possession. This then was followed by the plaintiffs failure or inability to produce it. At this point, the IRS was pressing Shernow and the plaintiffs lack of attention and failure to produce documents for over two years could have suggested to the IRS that the considerable delay reflected a less than candid attitude of the plaintiff. Actually, Shernow never received the tax records for 1989 pertaining to the acquisition.
At trial, the plaintiff argued and offered Mr. Jaconetta's testimony to support its claim that Shernow could have tried re-constructing the missing data through the plaintiff or should have resorted to the State Board of Accountancy. CT Page 7125
This first suggestion has no validity because it was apparent from the plaintiffs witnesses that for Hunter, record keeping and possession was not a top priority and little or nothing of substance would have been available.
As for the Board of Accountancy, this process was neither elaborated upon nor supported by evidence as to its function and effectiveness during the time in question. The effectiveness of this process was raised by Mr. Roy, the defendant's expert, in the course of his testimony on the standard of care.
From the court's perception, these claims reflect hindsight and little of substance in the overall scheme of events.
In view of the conflicting opinions of the experts, their roles in the dispute, the bases for their opinions, the circumstances under which Mr. Shernow was operating and the failures of the plaintiff to honor his requests, the court concludes that the plaintiff has not sustained its burden of proof that the defendant firm or Shernow individually breached the standard of care.
 II
The claim against Shernow for "advising" the plaintiff to settle itscase with Helming.
 A.
In December 1991, Helming bought suit against this plaintiff claiming unpaid fees for 1990 and 1991. The plaintiff counter-claimed, alleging malpractice by Helming in the services he performed for the plaintiff.
The plaintiffs counterclaim against Helming was not introduced into evidence, nor was a request made that the court take judicial notice of it, assuming it was part of a file of this court.
This suit was pending when the IRS in 1992 commenced an audit of the plaintiffs corporate returns, starting with the 1989 return.
The claim against Shernow is that he should have known that the plaintiff faced a huge tax liability because of Helming's malpractice. It is significant, however, that though Shernow was originally asked to assist in preparing the plaintiffs counterclaim against Helming, the role of plaintiffs expert in that litigation had now been assigned to yet another accountant, Kenneth Pia. CT Page 7126
While Shernow denies ever being asked for his opinion on whether to settle the Helming case, Attorney Solomon and Attorney David Wyskiel both testified that they spoke to Shernow and asked for his opinion of the settlement.
They both stated the IRS audit was their concern as any tax liability of the plaintiff for Helmings' tax work should have been considered in evaluating the claim against him.
According to both Solomon and Wyskiel, Shernow on these occasions, as previously, stated the IRS audit should produce little or no liability for the plaintiff. Relying on that statement, they claim they settled on terms which subsequently turned out to be unfavorable to the plaintiff.
Putting aside for the moment the question of whether Shernow is responsible for an allegedly bad decision, the plaintiff must first prove:
1. that it had a valid claim against Helming;
2. the amount of that claim; and
3. that it could recover any judgment it secured.
 B. Weaknesses in the claim against Helming
The services to the plaintiff for the acquisition which fueled this dispute were rendered in late 1988 and early 1989. The plaintiffs counterclaim alleging malpractice was filed in response to Helming's suit of December 1991, suggesting a statute of limitations hazard for the plaintiff.
The plaintiffs argument it could have recovered on any judgment, does not take into account the lack of evidence as to malpractice coverage and the amount of coverage, whether the carrier had asserted a reservation of rights and what period of time this carrier was covering. In fact, the payment from Helming to Hunter of $35,000 as part of the settlement was paid in part by Helming.'[1] (Exhibit P, photocopy of $10,000 check). Nor do we know if Helming had assets which could be reached, absent insurance coverage.
 C. The Claim Against Helming
CT Page 7127
In its presentation, the plaintiff stressed the point that it was prepared to and could have closed before the end of 1988. It blamed Helming for delaying the actual closing until January of 1989. of course, even if the closing had taken place in 1988, a Section 338 election form would have been required, if that section's tax benefits were to apply.
Since Helming did not testify, the court heard no explanation for why he elected Section 338 but didn't utilize it, nor why he applied those benefits to a closing held in 1989, after the Section 338 program expired.
The plaintiff charges Helming with responsibility for the closing "delay" and the loss of the Section 338 benefits. If the closing had been delayed by the plaintiff, however, then the plaintiff would have been responsible for the substantial taxes due on the acquisition.
Absent Helming and the counterclaim of the plaintiff, the court is left to ponder the value of the claim, particularly in light of the settlement that was reached. Another question unanswered is why the plaintiffs records and papers held by Helming were not more vigorously sought by the plaintiff since they directly affected the counterclaim.
 D. Weaknesses in the claim against Shernow as to the Helming settlement
The plaintiff offered no written evidence as to what was presented to Shernow, nor was any memo or writing from Shemow endorsing the settlement produced. The plaintiff relies on the testimony of Attorneys Solomon and Wyskiel to the effect that they each spoke on the phone to Shernow and obtained his opinion favoring the settlement.
In addition to denying that he "approved" the Helming settlement, Shemow's testimony included a chronological history of his attempts to obtain the tax material held by Helming. There is a documented evidence of numerous requests for the material being held by Helming, including at least one request in April of 1993 from the plaintiffs in house accountant, Michael Trodeman, addressed to Attorney Solomon.
In April of 1992, Mr. Solomon sought the opinion of Mr. Shernow with respect to the Helming lawsuit. Yet it wasn't until the middle of April 1994 that Helming produced boxes of Hunter records.
Finally, we must return to the plaintiffs claim that both Attorney Solomon and Attorney Wyskiel spoke on the phone to obtain Mr. Shernow's approval of the settlement, all of which Shernow denies. CT Page 7128
The court views this claim with some skepticism. The settlement was reached on April 26, 1994. Mr. Wyskiel concluded he spoke to Mr. Shernow on the 27di Obviously, the decision to settle had been made already. Was Mr. Wyskiel prepared to abort the settlement if Mr. Shernow objected? Was the settlement conditional on his approval?
The court concludes that the plaintiff has failed to substantiate its claim that Shernow was responsible for an allegedly unfavorable settlement. And further, the plaintiff has failed to prove the value and collectability of any judgment it might have recovered against Helming, absent the settlement.
 III Alleged Breach of Contract
In a second count, the plaintiff has alleged a breach of contract, citing eight specific breaches.
While the court's conclusion with respect to the standard of care and the discussion in Sections I and II are dispositive of this issue, the court will address these items individually.
Paragraph 14A alleges a failure to "properly obtain all necessary information to properly perform all accounting services . . ." In the court's view, Mr. Shernow made more than reasonable efforts to obtain the needed data. The plaintiff had the mechanism in the Helming suit to either get early answers or advise Shernow to look elsewhere. This failure on the part of the plaintiff negates this allegation as well as those set forth in these paragraphs as noted:
Paragraph CF:
The allegations here are a failure to properly advise the plaintiff as to its tax liabilities. The liability to the IRS was unknown because everyone, including the IRS, assumed a proper Section 338 filing by Helming. Without Helmings deposition or dingent disclosure, an entirely different picture was being presented.
Paragraph B, D, E, and H all claim action or inaction which constitutes breaches of the standard of care are thus covered as noted above. In addition, the acts of misfeasance alleged were directly the result of the lack of information Shernow sought and the plaintiff never obtained. In that regard, it should be noted that at no time did the plaintiff indicate to Shernow it was stalemated in its quest for data and that he should resort to other avenues for information.
As to Paragraph GZ the discussions above in Section II resolves this claim obviating the need for further comment by the Court.
 CONCLUSION
In view of the foregoing, judgment may enter for the defendants on all counts. _________________ Anthony DeMayo Judge Trial Referee